UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TONY EARL LEACH,<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF RODERICK L. VIRGIL, CAPTAIN LISA THOMAS, LIEUTENANT VINCENT THOMPSON, and LIEUTENANT SAQUINTON FULTON,<br><br>Defendants. | ) | Case No. 1:25CV71 |

RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' Motion to Dismiss [Doc. #10]. Plaintiff has failed to respond to the Motion to Dismiss and has not filed anything further in the case. For the reasons stated herein, the Court recommends that the Motion to Dismiss be granted.

I. BACKGROUND

In this action, Plaintiff alleges that Defendant Saquinton Fulton discarded Plaintiff's absentee ballot form, preventing Plaintiff from voting absentee in the 2024 general election. According to the Complaint, on or around October 12, 2024, Defendant Fulton distributed absentee ballot registration forms to Plaintiff and other detainees at the Hoke County Detention Center, in advance of the November 2024 general election. (Compl. [Doc. #2] at

5-7.)[1] Plaintiff alleges that Defendant Fulton then collected the forms. (Compl. at 9.) Plaintiff also alleges that on the following day, Lieutenant Bradsheer, a nonparty, also went around to collect the forms and learned that they had already been collected. (Compl. at 9.) According to the Complaint, Bradsheer and Defendant Lisa Thomas brought one of the forms to the "election building [and] while there, they asked could felons vote [and] this is w[h]ere it was made affirmative. Also they were told that unless the guy was on probation, parole etc. They couldn't vote." (Compl. at 9.)

Plaintiff alleges that he regularly asked about the status of his absentee ballot and that Defendant Vincent Thompson "[r]efused to reply," and that Defendant Thomas "was made aware of" Plaintiff's inquiries and "spoke to" Defendant Fulton. (Compl. at 9.) Plaintiff also alleges that Defendant Roderick L. Virgil, Sheriff of Hoke County, "was called" and "stated 'maybe they put the wrong address on the registration form.'" (Compl. at 9.) Plaintiff alleges that Defendant Fulton once stated, "Whatever party you checked we made the vote for you." (Compl. at 9.) Finally, Plaintiff alleges that on December 11, 2024, Defendant Fulton stated, "I threw those registration forms away, I take responsibility, because I feel felons shouldn't vote." (Compl. at 9.) Plaintiff seeks $500,000 in punitive damages. (Compl. at 7.)

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 against all Defendants in their individual and official capacities, claiming a deprivation of the right to vote guaranteed by Section One of the Fifteenth Amendment. (Compl. at 4.) Plaintiff also filed an application to proceed *in forma pauperis*, which this Court granted. (Order [Doc. #4].) In light of Plaintiff's

[1] For ease of reference, citations to the Complaint use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

status as a pro se prisoner filing *in forma pauperis*, the Court directed Plaintiff to fill out a summons for each Defendant and ordered the United States Marshal to serve the Complaint on Defendants. (Order [Doc. #5].) Defendants filed their Motion to Dismiss on December 23, 2025. (Mot. [Doc. #10].) On December 29, 2025, the Clerk's Office sent a *Roseboro* letter to inform Plaintiff of his right to respond to the Motion. (*Roseboro* Letter [Doc. #13].) Plaintiff has not filed any response or objection to the Motion to Dismiss, nor has he made any other filing in this case.[2]

II. LEGAL STANDARD

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted.[3] Local Rule 7.3 provides that "[i]f no response brief is filed within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be

---

[2] The Court notes that Plaintiff's address appears to have changed multiple times. Pursuant to Local Rule 11.1(b), Plaintiff has an obligation to notify the Court of his current address, as he previously did in February 2025 when moving to Craven Correctional Institution. (Notice of Change of Address [Doc. #3].) In October 2025, on the Summonses, Plaintiff listed his own mailing address as that of Johnson Correctional Institution. (Summonses [Doc. #6].) On December 23, 2025, the day Defendants filed their Motion to Dismiss, Plaintiff was still located at Johnson CI. (Def. Ex. 1, Offender History [Doc. #11-2].) The Clerk's Office addressed its letter to this same address on December 29, 2025. (*Roseboro* Letter [Doc. #13].) According to the North Carolina Department of Adult Corrections website (www.dac.nc.gov/dac-services/criminal-offender-searches), Plaintiff began a term of parole on January 28, 2026, and then returned to Craven CI after a March 10, 2026 probation revocation. Plaintiff appears to have been at Johnson CI with ample time to receive Defendant's filings and the *Roseboro* letter, and as noted above Plaintiff has failed to file an updated address as required by Rule 11.1(b). According to the NCDAC website, Plaintiff may now be at Maury Correctional Institution. Out of an abundance of caution, the Clerk will mail this Recommendation to Plaintiff at Johnson CI, Craven CI, and Maury CI, as these are the only potential available addresses for Plaintiff.

[3] Defendants also move to dismiss for improper service. The Court previously granted Plaintiff's request to proceed *in forma pauperis*, directed Plaintiff to fill out a summons for each Defendant, and ordered the United States Marshal to serve the Complaint on Defendants. (Order [Doc. #5].) All Defendants have since been served except for Defendant Thompson, who is no longer employed by Hoke County. (USMS Returns [Doc. #15, #16, #17, #18].) The Court will not require service on Defendant Thompson at this time because the Complaint should be dismissed for failure to state a claim.

granted without further notice." LR 7.3(k). Given Plaintiff's lack of response, it appears that he does not contest the Motion to Dismiss and may not wish to pursue the matter further. Nevertheless, "[a]district court is obliged to review a defendant's motion to dismiss and ensure that dismissal is appropriate even where, as here, a plaintiff fails to respond to the motion." Goudy v. Navy Fed. Credit Union Found., No. 23-1721, 2024 WL 2206508 (4th Cir. May 16, 2024) (citing Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014)). Where no response is filed to a Motion to Dismiss, the Court may "dismiss [the] action 'on the uncontroverted bases asserted' in a motion to dismiss," but the Court "must still review the grounds presented in the motion and cannot treat a nonresponse as a per se procedural default" Id. (quoting Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004), and citing Stevenson, 743 F.3d at 416 n.3). The Court therefore considers the Motion to Dismiss and the "uncontroverted bases asserted" therein.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all

of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678; Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023).

Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Complaint identifies the Fifteenth Amendment right to vote as the constitutional right at issue. (Compl. at 4.)

The Fifteenth Amendment to the United States Constitution provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or

by any State on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1. Here, however, Plaintiff has not alleged facts supporting that any Defendants were motivated by "race, color, or previous condition of servitude" when allegedly interfering with his ballot. See Howard v. Gilmore, 205 F.3d 1333 (4th Cir. 2000) (unpublished) ("As for Howard's claims under the Fourteenth and Fifteenth Amendments, in order to state a claim, Howard must establish that the Commonwealth's decision to disenfranchise felons was motivated by race.") Rather, Plaintiff appears to allege that Defendant Fulton discriminated against felons by interfering with the absentee ballot applications, as reflected in Defendant Fulton's alleged statement that he "threw those registration forms away . . . because I feel felons shouldn't vote."[4] Thus, Plaintiff has not alleged a Fifteenth Amendment violation, as he has not alleged any discrimination on the basis of race, and instead Plaintiff appears to raise claims only that he was not able to obtain an absentee ballot because he was a felon.

"States may constitutionally disenfranchise felons, and the Constitution does not require States to ever restore those voting rights once lost, even after a person has completed their sentence and any period of parole." Hawkins v. Youngkin, 149 F.4th 433, 441 (4th Cir. 2025) (citations omitted), cert. denied sub nom. Hawkins v. Spanberger, 146 S. Ct. 1642 (2026). Thus, "while the right to vote is normally a fundamental right subject to strict scrutiny if

---

[4] In this case, the only allegations against Defendant Thomas are that she delivered a form to the election building and asked if felons could vote, and that she spoke to Defendant Fulton after being "made aware" that Plaintiff asked about his ballot. These do not amount to an allegation that Thomas interfered in any way with Plaintiff's ability to vote. Similarly, the only allegation against Defendant Thompson—that he was notified of Plaintiff's inquiries and "refused to reply"—does not rise to the level of an alleged interference with or violation of a constitutional right. The Complaint therefore fails to state a claim against Defendants Thomas or Thompson. As to Defendant Virgil, identified in the Complaint as the Sheriff, Plaintiff alleges that Defendant "was called" about Plaintiff's inquiries and suggested that there may have been an error regarding the address on the form. Plaintiff therefore fails to allege any specific conduct by Defendant Virgil that could give rise to a claim. The Court focuses, therefore, on the allegations regarding Defendant Fulton's alleged conduct.

severely restricted, felons 'cannot complain about their loss of a fundamental right to vote because felon disenfranchisement is explicitly permitted' by Supreme Court precedent." Id. at 443; see also Richardson v. Ramirez, 418 U.S. 24, 41, 56 (1974) (holding that states may exclude convicted felons from the right to vote, even after completion of a sentence, as the Fourteenth Amendment expressly acknowledges denial of the right to vote due to "participation in rebellion, or other crime." (quoting U.S. Const. amend. XIV, § 2)).

If a State provides a process for restoration of rights, due process principles may apply, because "when a State creates a right, due process may entitle individuals to certain procedural protections." Hawkins, 149 F.4th at 442. In North Carolina, "[n]o person adjudged guilty of a felony . . . shall be permitted to vote unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2. These citizenship rights are "automatically restored upon the occurrence of . . . [t]he unconditional discharge of an inmate, of a probationer, or of a parolee by the agency of the State having jurisdiction of that person or of a defendant under a suspended sentence by the court." N.C. Gen. Stat. Ann. § 13–1. "Because disqualification entails revocation of any existing registration, a person whose right to vote has been restored must re-register in order to be able to vote." Burke v. Pasquotank Cnty. Bd. of Elections, No. 2:08-CV-22, 2010 WL 883017, at *2 (E.D.N.C. Mar. 8, 2010) (citing N.C. Gen. Stat. §§ 163–82.14(c)(2), 163–82.20A).

Furthermore, a pretrial detainee who is eligible to vote could potentially raise claims challenging limits on access to absentee ballots under the Fourteenth Amendment using an equal protection framework. See, e.g., Goosby v. Osser, 409 U.S. 512, 522 (1973); O'Brien v. Skinner, 414 U.S. 524, 530 (1974); McDonald v. Bd. of Election Comm'rs of Chicago, 394

U.S. 802, 807-08 (1969). In addition, if the right to vote itself is implicated, courts consider challenges to voting restrictions under the Anderson-Burdick balancing framework. See Anderson v. Celebrezze, 460 U.S. 780 (1983); Burdick v. Takushi, 504 U.S. 428 (1992). Finally, the Fourth Circuit has further held that "once the state makes absentee-by-mail voting available, it may not allocate access to it in a manner forbidden by the Constitution." Grant v. Belangia, No. 25-1413, 2026 WL 2409681, at *11 (4th Cir. Aug. 18, 2026). Here, however, Plaintiff contends only that his access to an absentee ballot was limited because Defendant Fulton believed he was a felon.

In the Complaint, Plaintiff identifies himself as a pretrial detainee, without reference to felony status at the time of the events underlying the Complaint. (Compl. at 5.) Plaintiff also appears to allege that Defendant Fulton interfered with his absentee ballot request due to a belief that felons should not vote, suggesting that Defendant Fulton believed Plaintiff to be a felon. Notably, Plaintiff does not allege facts supporting that he was eligible to vote, whether by absentee ballot or otherwise, in the 2024 general election. In the Motion to Dismiss, Defendants ask the Court to take judicial notice of Plaintiff's 2019 and 2020 felony convictions, as well as a State Board of Elections report showing Plaintiff's voter registration status as "removed." (Defs. Br. [Doc. #11] at 9.)[5] Plaintiff has not responded to these

[5] "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." Zak v. Chelsea Therapeutics Int'l, 780 F.3d 597, 606 (4th Cir. 2015) (citation and internal quotation marks omitted). However, "courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." Id.; see also Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record."); Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record."). In particular, courts regularly consider criminal records. Fusaro v. Cogan, 930 F.3d 241, 245 n.1 (4th Cir. 2019); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (same).

contentions. In addition, while North Carolina law offers a path to re-enfranchisement after the completion of a sentence, Plaintiff has not alleged that his rights were restored or that he was eligible for restoration of his rights. While it is possible that Plaintiff's citizenship rights had been fully restored ahead of the 2024 election, Plaintiff has failed to include sufficient factual allegations regarding any restoration of rights, eligibility to vote, and status of his registration. Further, given Plaintiff's failure to respond to the Motion to Dismiss, Plaintiff has not addressed or disputed Defendants' contentions.

It is ultimately Plaintiff's burden to allege facts that would plausibly establish both a right and interference with a right. Here, as set out above, Plaintiff has not alleged that Defendants were motivated by race or color in violation of the Fifteenth Amendment. In addition, the public record reflects that Plaintiff has prior felony convictions, which he does not contest, and to the extent he claims that his right to vote was impacted because of his prior felony convictions, "felon disenfranchisement is explicitly permitted" by the Constitution and Supreme Court precedent, Hawkins, 149 F.4th at 443, as discussed above. Further, Plaintiff has not challenged the North Carolina statutes disenfranchising those convicted of a felony, nor does he contend that he was eligible for restoration of rights or that he was denied restoration of rights for which he was eligible. Moreover, and relatedly, Plaintiff has not alleged that he was eligible to vote in the 2024 election, or that he had re-registered to vote in time to request an absentee ballot.[6] Accordingly, Plaintiff has not alleged facts

---

[6] The Complaint does not appear to allege interference with the form for registering to vote, but rather the separate form for requesting an absentee ballot. (Compl. at 6 ("Lt. Fulton passed out registration Form to rece[i]ve Absentee ballots," 9 ("I continued to ask about my Absentee ballot.")). Even if the Court were to infer that Plaintiff also intended to allege interference with voter registration forms themselves, a claim of interference with the ability to register to vote would also require that Plaintiff had been eligible to register.

supporting a claim that the alleged interference with his absentee ballot form violated any right, and the Complaint fails to state a claim upon which relief could be granted.

Finally, to the extent Plaintiff may be attempting to raise a claim regarding the rights of detainees other than himself, Plaintiff, as a non-lawyer, is not authorized to bring claims on behalf of others in federal court. See Myers v. Loudon Cnty. Pub. Schs., 418 F.3d 395, 401 (4th Cir. 2005).

Accordingly, the Court recommends granting Defendants' Motion to Dismiss, without prejudice to further consideration if Plaintiff files a new complaint clearly setting out the basis for his claims with further factual allegations supporting his claims and addressing the issues noted herein.

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss [Doc. #10] be granted and that Plaintiff's Complaint [Doc. #2] be dismissed without prejudice. This Recommendation should be sent to Plaintiff at Johnson CI, Craven CI, and Maury CI, as these are the only potential available addresses for Plaintiff.

This 25th day of August, 2026.

Joi Elizabeth Peake
United States Magistrate Judge

---

Moreover, the Court cannot attempt to consider all of the contours of all of the possible claims that Plaintiff might potentially be intending to claim. Plaintiff must set out the facts and the basis for the claims.